# In the United States Court of Federal Claims

No. 19-1752

(Filed: November 8, 2022)

```
*************************************
THE CENTECH GROUP, INC.,              *
                                      *
                  Plaintiff,          *
                                      *
      v.                              *   Lack of Subject-Matter Jurisdiction; RCFC
                                      *   12(b)(1); Contract Disputes Act; Damages.
                                      *
THE UNITED STATES,                    *
                                      *
                  Defendant.          *
*************************************
```

*Kenneth A. Martin*, McLean, VA, counsel for Plaintiff; *James Fontana* and *James D'Agostino*, Tysons, VA, of counsel.

*Amanda L. Tantum*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant; with whom was *Michael Farr*, United States Air Force.

## OPINION AND ORDER

**DIETZ, Judge.**

      THE CENTECH GROUP, INC. ("CENTECH"), a government contractor specializing in the provision of information technology services, brings this suit against the United States seeking payment for breach of contract under the Contract Disputes Act, 41 U.S.C. § 7104(b)(1) ("CDA"). CENTECH, suing on behalf of a subcontractor, claims the government cancelled the installation of a communication infrastructure and refused to accept delivery of certain materials after CENTECH and its subcontractor purchased those materials. The government moves for partial dismissal of CENTECH's complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). The government contends that the Court lacks jurisdiction over two of CENTECH's damage claims because CENTECH failed to present them to the contracting officer ("CO") for review prior to seeking relief in this Court. Because the Court finds that CENTECH failed to adequately present the relevant damage claims to the CO as required for this Court to exercise jurisdiction under the CDA, the government's motion is **GRANTED**.

### I. BACKGROUND

      CENTECH entered into a contract with the United States Air Force ("USAF") to design, acquire, and install a communication infrastructure as part of the renovation of a building on Vandenburg Air Force Base. Am. Compl. [ECF 8] ¶ 4. The contract required the USAF to reimburse CENTECH for materials procured for the project. *Id.* ¶ 5. CENTECH subcontracted a

portion of the work, including the purchase of certain materials, to Iron Bow Technologies, LLC ("Iron Bow"). *Id.* ¶ 8. After the USAF approved the Bill of Materials ("BOM") for purchase, Iron Bow issued a purchase order for the materials to its supplier, Communications Supply Corporation ("CSC"). *Id.* ¶¶ 10-12, 15. However, before CENTECH completed the delivery of the materials, the USAF cancelled the order, alleging that the materials did not meet the government's requirements and stating that it would not reimburse CENTECH for materials not yet delivered. *Id.* ¶¶ 24-25, 28. As a result, the USAF did not reimburse CENTECH for the materials, CENTECH did not pay Iron Bow, and Iron Bow did not pay CSC. *Id*. ¶¶ 32-33.

On October 12, 2018, CSC sued Iron Bow for non-payment of the materials.[1] [ECF 8] ¶ 33. While the CSC-Iron Bow litigation was pending, on August 22, 2019, CENTECH submitted a claim to the CO seeking payment for the materials Iron Bow ordered. *Id.* ¶ 34. On November 6, 2019, the CO issued her final decision denying plaintiff's claim. *Id.* ¶ 35.

Less than one week later, CENTECH filed the instant action against the USAF on behalf of Iron Bow, alleging breach of contract and seeking damages arising from the USAF's cancellation of the materials order. Compl. [ECF 1] ¶¶ 25-32. On March 11, 2020, CENTECH amended its complaint, adding claims for constructive termination for convenience and cancellation. [ECF 8] ¶¶ 54-65. In an unpublished opinion issued June 26, 2020, this Court granted the government's motion to dismiss CENTECH's claims for constructive termination for convenience and cancellation on the grounds that CENTECH failed to initially present these claims to the CO. *See* Op. & Order [ECF 22]. The only claim pending before this Court is CENTECH's first count for breach of contract.

CSC and Iron Bow settled their case on May 27, 2021, with Iron Bow agreeing to pay CSC $1,900,000. *See* App. to Def's Mot. to Dismiss [ECF 62-1] at 132-33.[2] On March 3, 2022, in response to a letter from the government seeking clarification of the damages sought, CENTECH advised that it was now seeking only $1,900,000 for the costs of the materials. *See id*. at 135-36. However, in addition to the material costs, CENTECH advised that it was also seeking storage, transportation, and insurance costs and attorneys' fees incurred during negotiations that took place prior to the filing of its claim in this Court. *Id*. at 136. On March 22, 2022, the government filed the instant motion to dismiss CENTECH's additional claims for damages, arguing that this Court lacks jurisdiction over these claims under the CDA. Def.'s Partial Mot. to Dismiss [ECF 62]. The government's motion is fully briefed, and the Court has determined that oral argument is not needed.

## II.   JURISDICTION

The United States Court of Federal Claims is a court of limited jurisdiction. *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). The Court's jurisdiction is defined by the Tucker Act, which waives the sovereign immunity of the United States for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of

---

[1] *See Commc'ns Supply Corp. v. Iron Bow Techs., LLC*, Civil Action No. 2:18-cv-10374-CB (W.D. Pa.).

[2] All page numbers in the parties' briefings refer to the page number generated by the CM/ECF system.

an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act "does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). The Tucker Act does, however, expressly grant this Court jurisdiction over claims arising under the CDA. 28 U.SC. § 1491(a)(2) ("The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under [the CDA.]"). As an express waiver of the government's immunity, the CDA "must be strictly construed in favor of the sovereign." *Orff v. United States*, 545 U.S. 596, 601-02 (2005).

To assert a claim against the United States under the CDA, a contractor must satisfy certain requirements. First, the contractor must submit its claim in writing to the CO for review. 41 U.S.C. § 7103(a)(1-2). Second, the contractor must submit its claim within six years after the claim accrues. *Id.* § 7103(a)(4)(A). A "claim" is defined as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to this contract." Federal Acquisition Regulations ("FAR") 52.233-1(c). Finally, for claims greater than $100,000, the contractor must certify that:

> (A) the claim is made in good faith;
>
> (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;
>
> (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and
>
> (D) the certifier is authorized to certify the claim on behalf of the contractor.

*Id.* § 7103(b)(1)(A-D). A contractor may seek review of the CO's final decision in this Court by filing a complaint within one year from the date it received the decision. 41 U.S.C. § 7104(b)(3). This Court reviews such claims *de novo*. *Id.* § 7104(b)(4).

### III.    STANDARD OF REVIEW

Motions to dismiss for lack of subject matter jurisdiction are governed by RCFC 12(b)(1). When considering such a motion, "this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor." *Cal. Dep't of Water Res. v. United States*, 128 Fed. Cl. 603, 609 (2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). When the government moves to dismiss the complaint under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction by a

preponderance of the evidence. *Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 775 (Fed. Cir. 2021). Further, the "court accepts only uncontroverted factual allegations as true for purposes of the motion." *United States Enrichment Corp. v. United States*, 121 Fed. Cl. 532, 534 (2015) (quoting *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014)). "[D]isputed facts outside the pleadings are subject to the fact finding of the court." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011). "Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter." *Sandstone Assocs., Inc. v. United States*, 146 Fed. Cl. 109, 112 (2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). Thus, if the Court determines that it lacks subject matter jurisdiction, it must dismiss the case. RCFC 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

**IV.    DISCUSSION**

The government argues that the Court lacks jurisdiction to consider CENTECH's claims for storage, transportation, and insurance costs and for attorneys' fees incurred during pre-claim negotiations because neither claim meets the jurisdictional prerequisites under the CDA. The Court addresses each of CENTECH's claims below.

**A.    CENTECH's Claim for Storage, Transportation, and Insurance Costs**

The government challenges the Court's jurisdiction to consider CENTECH's request for damages to cover the storage, transportation, and insurance costs incurred by Iron Bow after it took possession of the materials from CSC. [ECF 62] at 8. According to the government, in the August 22, 2019, claim that CENTECH submitted to the CO, CENTECH made no mention of these costs. *Id.* at 21-22. Rather, the government contends that CENTECH merely sought "damages for the purported costs of the Phase I BOM materials (such as cabling and connectors) ordered by Iron Bow." *Id.* at 21. In support of its argument, the government states that the operative facts related to CENTECH's claim for the costs of the Phase I BOM materials include references to Iron Bow's ordering the materials and to subsequent actions the parties took during 2017 and 2018, whereas the operative facts related to CENTECH's instant request for storage, transportation, and insurance costs focus on events that occurred after May 27, 2021—the date Iron Bow and CSC settled their claims. *Id.* at 22.

CENTECH disputes the government's characterization of the allegations in its amended complaint. Pl.'s Opp'n to Def.'s Partial Mot. to Dismiss [ECF 66] at 5. In CENTECH's view, an action brought pursuant to the CDA need only be "based" on the claim presented to the CO and the language of the complaint need not mirror that of the claim. *Id.* at 7. According to CENTECH, the government was aware that CSC's costs would be increasing daily until CSC's claims against Iron Bow were resolved. *Id.* at 8. Thus, CENTECH avers that the additional costs detailed in the amended complaint are based on the same set of operative facts as the claims submitted to the CO and, therefore, do not constitute a new claim. *Id.* Further, CENTECH argues that it expressly reserved the right to seek payment of additional expenses as they were incurred in the claim it submitted to the CO. *Id.* at 7.

In *K-Con Building Systems, Incorporated v. United States*, 778 F.3d 1000 (Fed. Cir. 2015), the United States Court of Appeals for the Federal Circuit set forth a general standard for assessing what constitutes a separate claim under the CDA for jurisdictional purposes: "[J]urisdiction exists over those claims which satisfy the requirements of an adequate statement of the amount sought and an adequate statement of the basis for the request." *Id.* at 1005. The court explained the rationale behind the requirements as follows:

> Our longstanding demand that a claim adequately specify both the amount sought and the basis for the request implies that, at least for present purposes, we should treat requests as involving separate claims if they *either* request different remedies (whether monetary or non-monetary) *or* assert grounds that are materially different from each other factually or legally. This approach, which has been applied in a practical way, serves the objective of giving the contracting officer an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request.

*Id.* at 1005-06 (citations omitted) (emphasis in original).

The Federal Circuit has indicated that "merely adding factual details or legal argumentation does not create a different claim, but presenting a materially different factual or legal theory . . . does create a different claim." *K-Con Bldg. Sys., Inc.*, 778 F.3d at 1006. When different factual grounds are asserted, "[t]he test does not focus on whether two claims have some overlapping facts." *Monterey Consultants, Inc. v. United States*, 159 Fed. Cl. 641, 650 (2022). "Rather, materially different claims necessitate a focus on a different or unrelated set of operative facts." *Id.*; *accord Affiliated Constr. Grp., Inc. v. United States*, 115 Fed. Cl. 607, 612 (2014) ("To determine whether a contractor's claim in court constitutes a 'new claim,' the court must assess 'whether the new issue is based on the same set of operative facts' as the claim submitted to the contracting officer.") (quoting *Foley Co. v. United States*, 26 Cl. Ct. 936, 940 (1992), *aff'd*, 11 F.3d 1032 (Fed. Cir. 1993)).

Here, the Court concludes that CENTECH's request for storage, transportation, and insurance costs is a new claim because it is based on different factual grounds and seeks different categories of relief. In its claim submitted to the CO, CENTECH sought reimbursement of a total of $2,009,105.44 for three line items. CENTECH sought $1,933,533.11 for "Total Subcontractor Costs," which covered the cost of the materials.[3] In addition to this amount, CENTECH sought $61,293.00 for "Sub/Material Handling," and $14,189.33 for "General & Admin." *Id.* CENTECH did not specify what specific costs were included in these two categories. *See id*. In

---

[3] In its claim submitted to the CO, CENTECH stated that the "[c]laim involves the Government's failure to pay several invoices provided as an attachment to the May 21 letter and as Exhibit 1 to the December 18 letter." [ECF 62-1] at 3. The first invoice, dated May 21, 2018, is on CENTECH letterhead addressed to the CO and lists 61 items totaling $1,933,533.11. *Id.* at 16-17. This amount is characterized on the invoice as "Total Subcontractor Costs." *Id.* at 17. The second invoice, dated April 18, 2018, is on Iron Bow letterhead addressed to CENTECH, and it also lists 61 items totaling $1,933,533.11. *Id.* at 18-19.

its original complaint, CENTECH sought $2,009,105.44 for breach of contract in Count I. Compl. [ECF 1] ¶ 32. In its amended complaint, CENTECH lowered the amount claimed in Count I to $1,933,533.11. [ECF 8] ¶¶ 52, 54-65.

Following the filing of its amended complaint, CENTECH filed its initial disclosures under RCFC 26(a)(1). [ECF 62-1] at 101-08. CENTECH maintained that damages still totaled $1,933,533.11 and covered "unreimbursed costs for the Phase I BOM." *Id.* at 107. On January 19, 2022, the government sent CENTECH a letter requesting clarification of the amount sought, noting that Iron Bow and CSC had settled their claim for a lower amount ($1,900,000) and that the total cost of materials Iron Bow ordered from CSC was even lower ($1,880,236.03). *Id.* at 134-35. In its March 3, 2022, response, CENTECH explained that the reason it initially sought $1,933,533.11 was because Iron Bow billed CENTECH that amount. *Id.* at 137-38. However, CENTECH further stated that because Iron Bow settled with CSC for $1,900,000, it was now only seeking the lesser amount. *Id.* at 138. CENTECH then stated the following:

> In addition to the actual costs of the materials incurred, the Government has failed to provide any direction on CENTECH's disposition of the materials actually purchased. To that end, as we have reviewed potential buyers for the materials, storage fees continue to be incurred on a monthly basis. Those fees, including transportation and insurance, are in now in excess of $97,750, and continue to accrue at a rate of $36,000 per year absent Government direction. These fees include transportation to a warehouse, storage, and bailee's insurance incurred to date; additional costs may be incurred for storage and disposition of the materials.

*Id.* at 137-38.

The problem for CENTECH is that its claim for storage, transportation, and insurance costs is based on a different set of operative facts. CENTECH's claim before the CO was based on CENTECH's contract with the USAF, CENTECH's purchase of materials, the USAF's determination that the materials failed to meet contract requirements, the USAF's cancellation of the materials order, and the USAF's failure to reimburse CENTECH for the cost of the materials. CENTECH's claim for storage, transportation, and insurance costs is based on Iron Bow's purchase of materials from CSC, Iron Bow's and CSC's settlement agreement, and Iron Bow's taking possession of the materials from CSC. While CENTECH's claim before the CO for reimbursement of the costs of the materials and its instant claim for storage, transportation, and insurance costs may have some overlapping facts, this does not render them the same under the CDA. The critical issue is that the Court must focus on different operative facts to resolve CENTECH's claim for storage, transportation, and insurance costs. *See Monterey Consultants, Inc.*, 159 Fed. Cl. at 650. Because the CO was not given adequate notice of CENTECH's claim for storage, transportation, and insurance costs and therefore did not have an opportunity to rule on it, the Court does not have jurisdiction to consider it. *See Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 418 (1987) ("The critical test appears to be whether the scheme of adjudication prescribed by the CDA is undermined by the contractor's claim on appeal—that is, by

circumventing the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim.").

Further, the Court is not persuaded by CENTECH's assertion that its current claim merely seeks an enlargement of the damages previously sought. In *Kunz Construction Company v. United States*, 12 Cl. Ct. 74 (1987), the United States Claims Court held that the court has jurisdiction over an enlarged claim: "(1) if the increase in the amount of the claim is based on the same set of operative facts previously presented to the contracting officer; and (2) the court finds that the contractor neither knew nor reasonably should have known, at the time when the claim was presented to the contracting officer, of the factors justifying an increase in the amount of the claim." *Id.* at 79. In *Kunz*, a construction company that had contracted with the United States to build a cancer treatment center initially brought a claim before the CO seeking compensation for additional electrical work it claimed the government required. *Id.* at 76. In its complaint before the Claims Court, the contractor added a claim for increased overhead, "which the plaintiff allegedly sustained as a result of the extra electrical work required by the Government." *Id.* at 79. The Claims Court concluded that while the claim for increased overhead was based on the same set of operative facts previously presented to the CO, the court lacked jurisdiction over the claim because plaintiff, an experienced contractor, should have known at the time it submitted its claim to the CO that it would be performing additional electrical work, which in turn would increase its overhead expenses. *Id.*

A similar claim for enlarged damages was at issue in *Modeer v. United States*, 68 Fed. Cl. 131 (2005), *aff'd*, 183 F. App'x 975 (Fed. Cir. 2006). In *Modeer*, plaintiffs leased a building to the United States. *Modeer*, 68 Fed. Cl. at 134. Although both parties agreed that they had created a holdover tenancy, they did not agree on the start and end dates of that tenancy. *Id.* As a result, plaintiffs sent the CO a letter complaining that the government was a holdover tenant, and that rent was accruing at a specified *pro rata* yearly rate. *Id.* Next, plaintiffs filed suit in this Court, again requesting a specified amount of back rent and seeking utility costs for the same holdover period. *Id.* First, the court noted that, despite plaintiffs not seeking an exact amount of back rent, the CO could calculate the appropriate amount: "The sum certain requirement is met if the contracting officer can determine the amount claimed by a simple mathematical calculation." *Id.* at 137; *see also LDG Timber Enters., Inc. v. United States*, 8 Cl. Ct. 445, 455 (1985) (holding the court lacked jurisdiction over the contractor's claim for "costs resulting from logging of mismarked timber" because it was "not reduced to a specific amount"). Next, the Court concluded that it had jurisdiction over plaintiffs' claim for increased rent because plaintiffs had previously presented it to the CO. *Id.* The court explained:

> It is certainly true that a contractor may not present a new claim to this court that was not first presented to the contracting officer for a final decision. But if the dollar value of a claim increases based on new information available only after the claim was submitted to the contracting officer, it is the same claim, not a new claim, as long as it arises from the same operative facts as the original claim and claims the same categories of relief.

*Id.* at 137 (citations omitted). Ultimately, the *Modeer* court held that it had jurisdiction over the plaintiffs' claim for holdover rent because it arose from the same set of operative facts, claimed the same category of relief as the initial request for holdover rent submitted to the CO, and because the plaintiffs could not have known the exact length of the government's holdover tenancy when they presented their claim to the CO. *Modeer*, 68 Fed. Cl. at 137. Regarding the plaintiffs' claim for utility costs, however, the court found that the plaintiffs neither mentioned utility costs in their letter to the CO, nor did they specify a sum certain. *Id.* at 139.

CENTECH's current claim for storage, transportation, and insurance costs does not qualify as an enlarged claim. Although CENTECH's current claim derives generally from the government's alleged breach of the contract, it is based on different operative facts, as explained above. Additionally, CENTECH now seeks reimbursement for categories of relief that were never mentioned in the claim submitted to the CO. In fact, the only reference CENTECH made to storage costs appears in the letter it submitted to the CO, wherein it states: "As this matter has progressed, we understand that CSC's costs in storing the equipment increase on a daily basis, and CSC has reserved all of its rights against Iron Bow." *See* [ECF 62-1] at 7. This statement does not reference any costs incurred either by Iron Bow or CENTECH, does not reference transportation or insurance costs, and does not specify a sum certain. This statement does not even seek reimbursement. Nevertheless, this statement does demonstrate that at the time it submitted its claim to the CO, CENTECH was fully aware that CSC was incurring storage fees because of the USAF's refusal to accept delivery of the materials and that such storage fees would increase over time. Thus, it is reasonable to conclude that CENTECH knew that the government's refusal to accept delivery of the materials would, at a minimum, result in CENTECH or its subcontractors incurring additional storage costs. Despite this apparent knowledge, CENTECH failed to submit storage costs as part of its claim to the CO. CENTECH also failed to submit transportation and insurance costs. Because these costs are based on different operative facts and fall into different categories of relief, CENTECH's current claim cannot be viewed as an enlarged claim.

The Court is also not persuaded by CENTECH's argument that it reserved the right to seek reimbursement for later-incurred expenses, such as storage, transportation, and insurance costs. While CENTECH "reserve[d] the right to increase the total amount requested as further expenses in connection with this Claim are incurred"[4] in the claim it submitted to the CO, this statement would, if interpreted as CENTECH suggests, eviscerate the CDA's requirement that contractors initially seek review of their claims before the CO prior to filing suit in this Court. *See Cont. Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987) ("All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."). Simply stated, CENTECH did not put the CO on adequate notice that it was seeking reimbursement for storage, transportation, and insurance costs. Therefore, under the CDA, the Court lacks jurisdiction over CENTECH's request for these costs.[5]

---

[4] [ECF 62-1] at 8 n.9.

[5] The government also contends that, even though CENTECH's claim for storage, transportation, and insurance costs does not presently exceed $100,000, plaintiff should be required to satisfy the CDA's jurisdictional

### B. CENTECH's Claim for Attorney's Fees

The government argues that the Court also lacks jurisdiction to consider CENTECH's request for attorney's fees incurred in connection with negotiations prior to filing its CDA claim. The government explains that, whereas CENTECH originally alleged that it was owed attorney's fees in relation to the government's breach of contract claim, [ECF 62] at 17, CENTECH now seeks "contract administration costs related to negotiation," *id.* at 18 (quotation marks omitted). The government argues that the request for attorney's fees in CENTECH's original claim and the one raised for the first time in its amended complaint are "materially different legally." *Id.* at 19. According to the government, "to establish the breach of contract claim raised in its August 22, 2019 claim, CENTECH has to show (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Id.* (quotation marks omitted). By comparison, the government continues, "CENTECH's new claim for contract administration costs requires a showing (1) that CENTECH incurred legal fees; (2) that the costs were reasonable; and (3) that the costs were allowable." *Id.* (citing FAR 31.205-33). Aside from being based on different legal grounds, the government also avers that the Court lacks jurisdiction over CENTECH's new claim for attorney's fees because CENTECH failed to specify a sum certain in its August 22, 2019, claim. Def.'s Reply in Support of its Mot. to Dismiss [ECF 70] at 11.

CENTECH counters that this Court has jurisdiction over its claim for additional attorney's fees because, like its claim for additional costs, it was originally submitted to the CO. [ECF 66] at 5. Further, CENTECH argues that simply because the CO did not expressly reference its request for attorney's fees in her final decision does not mean the request was not made. *Id.* at 5-6. Any other reading of its claim before the CO, CENTECH maintains, would be "overly narrow." *Id.* at 7.

In *Tolliver Group, Inc. v. United States*, 20 F.4th 771 (Fed. Cir. 2021), the Federal Circuit was tasked with discerning whether the relief sought by the plaintiff in the claim it submitted to the CO was the same as the relief sought in its complaint. In *Tolliver*, a third-party relator brought a *qui tam* action against the plaintiff, a contractor, alleging that it falsely certified compliance with the original contract. *Id.* at 773. The plaintiff prevailed in the *qui tam* action and thereafter submitted a claim to the CO under the CDA for "an equitable adjustment and payment . . . in the amount of $195,889.78 for allowable legal fees." *Id.* at 774. Citing FAR § 31.205-47, the plaintiff argued that, because it successfully defended a False Claims Act suit, it was entitled to recover costs, including attorney's fees. *Id.* The CO denied the plaintiff's claim, and so the plaintiff sued the government in this Court. *Id.* Following multiple amendments to the complaint and extensive motions practice, this Court entered judgment for the plaintiff, finding that the government had breached an implied warranty of performance.[6] *Id.*

---

certification requirement because there is a likelihood that these costs will exceed the $100,000 threshold. [ECF 62] at 22-23. However, because the Court has determined that it lacks jurisdiction over CENTECH's claim for these costs, it need not address this argument.

[6] Thereafter, this Court denied the government's motion for reconsideration. *Tolliver*, 20 F.4th at 775.

The government appealed and the Federal Circuit held as follows:

> Here, the claim that Tolliver presented to the contracting officer was, on its face, based on allowability under FAR § 31.205-47, not based on a breach of the implied warranty of performance. Tolliver's initial statement requesting "an equitable adjustment and payment . . . for allowable legal fees," was at so high a level of generality that, without further specification, it could cover materially distinct claims, and it did not give adequate notice of any specific claim. And when Tolliver's letter to the contracting officer provided the narrowing specificity, the elaboration gave adequate notice only that a FAR claim was at issue, not that the elements of a breach of the implied warranty of performance were at issue.

*Id.* at 776 (citations omitted). The Federal Circuit then explained why it concluded that the legal theories underpinning the different claims were "not materially the same":

> The claim presented to the contracting officer sought recovery of the expended legal fees as "allowable" costs under § 31.205-47. That required showing (1) that Tolliver had incurred legal fees defending a proceeding listed in § 31.205-47(b) (here, a *qui tam* False Claims Act lawsuit); (2) that the costs were not rendered unallowable under § 31.205-47(b) because of the result of the proceeding; and (3) that Tolliver was seeking an appropriate percentage of its expended legal fees, limited by regulation to 80%. FAR § 31.205-47(e). By contrast, the general elements of the legal theory for the claim on which the Claims Court entered its judgment were (1) that the contract bound Tolliver to comply with a government-provided "design specification" that, if followed, would produce a "defective or unsafe" result; (2) that Tolliver had complied with the specification or that compliance was commercially impossible; and (3) that Tolliver incurred costs proximately caused by the defect in the specification.

*Id.* at 777 (citations and quotation marks omitted).

In the case at bar, as in *Tolliver*, the Court concludes that not only is the remedy sought now different than the one originally sought, but the legal and factual bases for the claims are different as well. In the claim it submitted to the CO, under the caption "Relief Requested," CENTECH sought "[a] determination that CENTECH/Iron Bow is entitled to reasonable attorneys' fees and related expenses in connection with this Claim." [ECF 62-1] at 9. CENTECH did not explain what amounts were included in its request for "expenses in connection" with its claim, nor did it specify a dollar amount. Thus, in its original claim, CENTECH sought an unspecified amount of attorney's fees and an additional unspecified amount of expenses in connection with its claim that the government breached its contract with CENTECH.

In its amended complaint, CENTECH references attorney's fees twice. First, under Count I, its breach of contract claim, CENTECH states the following:

> As a result of these breaches, Iron Bow has incurred damages in the amount of $1,933,533.11—to include Iron Bow's costs for the CSC Purchase Order (less the cost for the Phase I Paid Materials) and Iron Bow's lost profits on Phase I Materials—plus CDA interest, costs and expenses, to include legal fees, in connection with the preparation and filing of the Claim and this action, less applicable credits that may apply or otherwise be determined.

Am. Compl. and Req. for Declaratory J. [ECF 8] ¶ 52. Next, under the caption "Relief Requested," CENTECH "demands judgement against the Defendant . . . (4) For Contracts [sic] Disputes Act interest, and costs and legal fees incurred herein." *Id.* at 11. Further, on March 3, 2022, CENTECH stated that it was seeking "a reasonable amount of attorneys' fees in the sum of approximately $8,000, subject to any upward revisions pending final review of invoices and charges." [ECF 62-1] at 138. CENTECH also stated the following:

> As you are aware, attorneys' fees are recoverable to the extent incurred in support of negotiation rather than a litigation posture. *See LCC-MZT Team IV v. United States*, 155 Fed. Cl. 387, 504 (2021) ("If a contractor incurred the cost for the genuine purpose of materially furthering the negotiation process, such cost should normally be a contract administration cost allowable under FAR 31.205-33, even if negotiation eventually fails and a CDA claim is later submitted. On the other hand, if a contractor's underlying purpose for incurring a cost is to promote the prosecution of a CDA claim against the Government, then such cost is unallowable under FAR 31.205-33." (internal citations and quotations omitted)). Thus, CENTECH seeks to recover its attorneys' fees incurred prior to the filing of the claim.

*Id.*

Although it is not entirely clear, it appears that CENTECH now seeks to recover, in addition to the attorney's fees related to its breach of contract claim, attorney's fees incurred during negotiations held prior to the filing of its claim with the CO—fees CENTECH asserts are allowable as contract administration costs under the FAR. The critical issue is that CENTECH's request for attorney's fees based on its breach of contract claim is based on a materially different legal theory than its request for attorney's fees under the FAR. To prevail on the former, CENTECH must prove that (1) CENTECH and the government entered into a valid contract; (2) under the contract, the government had a duty to reimburse CENTECH for materials purchased in connection thereto; (3) the government breached the contract when it refused to permit the delivery of the materials (despite having previously approved their purchase, delivery, and

installation) and when it refused to reimburse CENTECH for the materials; (4) CENTECH incurred damages as a result of the government's breach; and (5) CENTECH is entitled to attorney's fees. *See* [ECF 8] ¶¶ 39-53. On the other hand, to prevail on the latter, CENTECH must prove that (1) CENTECH incurred attorney's fees; and (2) its attorney's fees qualify as reimbursable costs under FAR 31.205-33, which provides for the reimbursement of "professional and consultant service costs." Because the latter basis for seeking attorney's fees was not expressly brought before the CO, the Court lacks jurisdiction to consider it. *See Kenney Orthopedic, LLC v. United States*, 83 Fed. Cl. 35, 43 (2008) (holding that the court lacked jurisdiction over plaintiff's claim for breach of contract damages, to include attorney's fees, because plaintiff failed to submit a claim to the CO for the same). At bottom, CENTECH's initial claim failed to put the CO on adequate notice that it was seeking reimbursement of attorney's fees incurred during negotiations as an allowable cost under FAR 31.205-33.

## V.     CONCLUSION

For the reasons set forth above, "Defendant's Motion to Dismiss Plaintiff's Amended Complaint, in Part, Pursuant to RCFC 12(b)(1)" [ECF 62] is **GRANTED**. CENTECH's claims for storage, transportation, and insurance costs and for attorneys' fees incurred during pre-complaint negotiations are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge