# In the United States Court of Federal Claims

No. 19-1752

(Filed: August 8, 2023)

```
*************************************
THE CENTECH GROUP, INC.,             *
                                     *
            Plaintiff,               *    RCFC 12(b)(1); RCFC 12(b)(6); Standing;
                                     *    Contract Disputes Act; Breach of Contract;
       v.                            *    Breach of the Implied Duty of Good Faith
                                     *    and Fair Dealing; Pass-Through Claim;
THE UNITED STATES,                   *    FAR 31.205-33.
                                     *
            Defendant.                *
*************************************
```

*Kenneth A. Martin*, Martin Law Firm, McLean, VA, counsel for Plaintiff; With whom were *James Fontana* and *James D'Agostino*, Fontana Law Group, PLLC, McLean, VA, of counsel. Also with whom were *David R. Warner* and *Heather B. Mims*, Warner PLLC, Reston, VA, of counsel.

*Amanda L. Tantum*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Michael J. Farr*, Senior Trial Attorney, Air Force Commercial Litigation Field Support Center.

## OPINION AND ORDER

**DIETZ, Judge.**

THE CENTECH GROUP, INC. ("CENTECH"), a government contractor specializing in information technology services, brings suit against the United States seeking damages for breach of contract under the Contract Disputes Act, 41 U.S.C. § 7104(b)(1) ("CDA"). CENTECH, suing on behalf of its subcontractor, Iron Bow Technologies, LLC ("Iron Bow"), claims the government improperly cancelled the installation of a communication infrastructure and refused to accept delivery of certain materials after CENTECH and its subcontractor purchased the materials. The government moves for dismissal of CENTECH's second amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that CENTECH failed to demonstrate that it has standing to bring its claims and failed to sufficiently state a claim for relief. Because the Court finds that CENTECH established that it has standing to bring its claims and that CENTECH adequately stated its claims for relief, the government's motion to dismiss is **DENIED**.

**I.   BACKGROUND**

CENTECH entered into a contract with the United States Air Force ("USAF") to design, acquire, and install a communication infrastructure as part of the renovation of a building on

Vandenburg Air Force Base. Sec. Am. Compl. [ECF 94] ¶ 4. The contract required the USAF to reimburse CENTECH for materials procured for the project. *Id.* ¶ 5. CENTECH subcontracted a portion of the work, including the purchase of certain materials, to Iron Bow. *Id.* ¶ 8. After the USAF approved the Bill of Materials ("BOM") for purchase, Iron Bow issued a purchase order for the materials to its supplier, Communications Supply Corporation ("CSC"). *Id.* ¶¶ 10-12, 15. However, before CENTECH completed the delivery of the materials, the USAF cancelled the order, alleging that the materials did not meet the government's requirements and stating that it would not reimburse CENTECH for materials not yet delivered. *Id.* ¶¶ 24-25, 28. As a result, the USAF did not reimburse CENTECH for the materials, CENTECH did not pay Iron Bow, and Iron Bow did not pay CSC. *Id.* ¶ 32.

On October 12, 2018, CSC sued Iron Bow for non-payment in the United States District Court for the Western District of Pennsylvania. *See Commc'ns Supply Corp. v. Iron Bow Techs., LLC*, Civil Action No. 2:18-cv-10374-CB (W.D. Pa.); [ECF 94] ¶ 39. On June 5, 2019, while the CSC-Iron Bow litigation was pending, CENTECH submitted a claim to the Contracting Officer ("CO") seeking payment for the materials ordered by Iron Bow. App. to Sec. Am. Compl. [ECF 94-1] at 122. On November 6, 2019, the CO issued her final decision denying CENTECH's claim. [ECF 94] ¶ 35. Less than one week later, CENTECH filed a complaint in this Court against the USAF on behalf of Iron Bow, alleging breach of contract and seeking damages arising from the USAF's cancellation of the materials order. Compl. [ECF 1] ¶¶ 25-32.

CSC and Iron Bow settled their case on May 27, 2021, with Iron Bow agreeing to pay CSC $1,900,000. *See* App. to Def.'s Partial Mot. to Dismiss [ECF 62-1] at 132-33.[1] On March 3, 2022, in response to a letter from the government seeking clarification of the damages sought, CENTECH advised that it was now seeking $1,900,000 for the costs of the materials. *See id.* at 135-36. CENTECH further advised that it was also seeking storage, transportation, and insurance costs relating to the materials and attorneys' fees incurred during negotiations that took place prior to the filing of its claim. *Id.* at 136. On March 22, 2022, the government filed a motion to dismiss CENTECH's additional claims for damages, arguing that the Court lacks jurisdiction over these claims under the CDA. Def.'s Partial Mot. to Dismiss [ECF 62]. The Court granted the government's motion in an opinion issued on November 8, 2022, dismissing CENTECH's additional claims because CENTECH "failed to adequately present the relevant damage claims to the CO as required for this Court to exercise jurisdiction under the CDA." *Centech Grp., Inc. v. United States*, 162 Fed. Cl. 698, 700 (2022).

CENTECH submitted a supplemental claim to the CO seeking transportation, storage, and insurance costs, as well as attorneys' fees, on November 30, 2022, and the CO issued her final decision denying CENTECH's claim on February 3, 2023. [ECF 94-1] at 134, 191. CENTECH filed its second amended complaint on April 13, 2023, incorporating the claimed costs as damages. [ECF 94]. On April 27, 2023, the government filed the instant motion to dismiss CENTECH's second amended complaint pursuant to RCFC 12(b)(1) and 12(b)(6). [ECF 95]. The government's motion is fully briefed, and the Court determined that oral argument is not necessary.

---

[1] All page numbers in the parties' briefings refer to the page number generated by the CM/ECF system.

## II. LEGAL STANDARDS OF REVIEW

A motion to dismiss a claim for lack of standing pursuant to RCFC 12(b)(1) questions whether the court has jurisdiction to adjudicate the merits of the underlying dispute. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "To survive a motion to dismiss for lack of standing, a complaint must contain sufficient factual matter that would plausibly establish standing if accepted as true." *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1355 (Fed. Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks and brackets omitted); *see also Groundbreaker Dev. Corp. v. United States*, 163 Fed. Cl. 619, 627-628 (2023). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In determining whether jurisdiction exists, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss. *Dyck v. Albertelli Law*, 98 Fed. Cl. 624, 630 (2011). The court should assume the veracity of factual allegations only where they are well-pleaded. *Iqbal*, 556 U.S. at 664; *see also Crow Creek*, 900 F.3d at 1354-55. If the court determines that a party lacks standing, then the court lacks jurisdiction and must dismiss the case. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

An RCFC 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted challenges the court's ability to "exercise its general power with regard to the facts peculiar to the specific claim." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999). As when deciding an RCFC 12(b)(1) motion, when the court considers an RCFC 12(b)(6) motion, it construes the complaint's allegations in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court must inquire whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the Court must assess whether "a claim has been stated adequately" and whether "it may be supported by [a] showing [of] any sets of facts consistent with the allegations in the complaint." *Id.* at 563. The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555.

## III. DISCUSSION

In its second amended complaint, CENTECH alleges that the USAF breached its contract with CENTECH, as well as its implied duty of good faith and fair dealing, by authorizing CENTECH to purchase the BOM materials and then subsequently refusing to accept delivery and allow installation of such materials. On behalf of Iron Bow, CENTECH seeks damages for the costs of the BOM materials under Count I, the costs of transportation, storage, and insurance relating to the materials under Count II, and attorneys' fees incurred during pre-claim

negotiations with the USAF under Count III. The government moves to dismiss Counts I and II of the second amended complaint for lack of standing under RCFC 12(b)(1) and for failure to state a claim under RCFC 12(b)(6), arguing that CENTECH does not sufficiently allege that the USAF's actions caused the alleged damages. [ECF 95] at 8. The government also moves to dismiss CENTECH's claims under Counts I and II that the USAF breached the implied duty of good faith and fair dealing under RCFC 12(b)(6), arguing that CENTECH does not show how any specific contractual promise was undermined by the USAF. *Id*. at 21. Lastly, the government moves to dismiss CENTECH's claim for attorneys' fees under Count III under RCFC 12(b)(6), arguing that CENTECH does not provide sufficient factual allegations that its attorneys' fees were incurred by CENTECH or that they relate to negotiations with the USAF. *Id.* at 26. As explained below, the Court finds that CENTECH has established standing and has sufficiently stated its claims for relief in Counts I and II. The Court also finds that CENTECH has sufficiently stated its claims for breach of the implied duty of good faith and fair dealing in Counts I and II and for attorneys' fees in Count III.

### A. Motion to Dismiss Counts I and II Under RCFC 12(b)(1) and 12(b)(6)

The government argues that CENTECH has failed to demonstrate that it has standing to bring its claims in Counts I and II because "it cannot demonstrate that its alleged injuries are fairly traceable to any conduct by the Government." [ECF 95] at 17. The government posits:

> The alleged series of events—leading from the Government's purported refusal to pay for or allow delivery of the BOM materials [], to CENTECH's decision not to reimburse Iron Bow for the costs of the BOM materials [], to CSC's filing of a complaint against Iron Bow, to the district court's order finding Iron Bow liable to CSC for the BOM materials, to CSC and Iron Bow's settlement []—is too attenuated to show the required causal connection between the Government's alleged action and the alleged damages in Counts I and II.

*Id*. at 15. The government contends that CENTECH has not established standing because its allegations "reflect an independent decision by CENTECH not to reimburse Iron Bow for the costs of the BOM materials, an independent decision by CSC to sue Iron Bow, and independent decisions by Iron Bow and CSC to settle for $1.9 million." *Id*.

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dis*t., 475 U.S. 534, 541 (1986). The Court of Federal Claims, "though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III." *Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017) (quoting *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)) (internal quotation marks omitted). To satisfy the Article III standing requirements, a plaintiff must establish "(1) an 'actual or imminent' injury-in-fact that is 'concrete and particularized;' (2) a 'causal connection between the injury and the conduct complained of;' and (3) 'likely[ ] . . .

redress[ability] by a favorable decision.'" *Starr Int'l Co., Inc.*, 856 F.3d at 964 (quoting *Lujan*, 504 U.S. at 560-61). Importantly, for standing purposes "the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-561 (cleaned up) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

CENTECH has sufficiently established standing in Counts I and II of its complaint because its alleged damages are "fairly traceable" to the alleged breaches by the USAF. In Count I, CENTECH alleges that the USAF breached its contract with CENTECH by authorizing it to purchase the BOM materials, approving delivery and installation of the materials, refusing to permit delivery, and then directing it to cancel the materials order. [ECF 94] ¶¶ 54-57. CENTECH also alleges that the USAF breached its implied duty of good faith, cooperation and non-hinderance of performance by its actions under the contract with respect to the BOM materials. *Id*. ¶ 58. As a result of the USAF's alleged breaches, CENTECH claims that Iron Bow incurred damages for the costs of the BOM materials and that CENTECH is potentially liable to Iron Bow for these damages. *Id*. ¶¶ 61-62.

In a prior decision in this case, Judge Bruggink determined that CENTECH had sufficiently established standing under Count I:

> First, plaintiff contends it was injured when the United States cancelled the approved [BOM], yet plaintiff remains liable for paying for the undelivered goods. Second, plaintiff traces the injury to the [USAF's] actions: if the [USAF] had not cancelled the [BOM], plaintiff would have completed delivery, and the United States would have accepted the goods. Finally, plaintiff alleges that the court can redress the injury by requiring defendant to pay for the undelivered materials. These allegations are sufficient to demonstrate Article III standing.

Op. [ECF 22] at 6. This analysis remains intact. That the district court litigation between Iron Bow and CSC was still pending when this prior decision was issued, and that the litigation has since been resolved, does not impact the determination that CENTECH has established standing. Had the litigation between Iron Bow and CSC been resolved in favor of Iron Bow, CENTECH may no longer be liable to Iron Bow for the cost of the BOM materials, and CENTECH may no longer have a claim for damages against the USAF. However, as it stands, CENTECH still alleges that it remains liable to Iron Bow for payment of the BOM materials, and CENTECH's alleged liability remains traceable to the USAF's alleged breaches of its contract with CENTECH. The causal relationship between CENTECH's alleged damages and the USAF's alleged breaches are not too remote to support standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (stating that "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.") (citing *Lujan*, 504 U.S. at 560).

The same holds true for the transportation, storage, and insurance costs that CENTECH alleges as damages under Count II. With respect to Count II, the government argues that "the additional links in the causal chain . . . make those alleged damages even more attenuated from the Government's purported actions." [ECF 95] at 15. The government explains that the "claimed damages in Count II result from the [same] independent decisions . . . , along with Iron Bow and CSC's inclusion of an alleged term in the settlement agreement requiring Iron Bow to retrieve the BOM materials." *Id*. at 16. Additionally, the government emphasizes that Iron Bow had the option under the settlement agreement to take possession of the BOM materials or to leave them with CSC for disposition, and that these costs resulted from Iron Bow's independent decision to take possession of the materials. *Id*. at 16-17.

The settlement agreement between Iron Bow and CSC required that Iron Bow take possession of the BOM materials within thirty days from execution of the agreement and provided that, if Iron Bow fails to take possession, Iron Bow disclaims its rights and title to the materials and CSC may dispose of the materials as it sees fit. [ECF 95-1] at 4. In accordance with this term, Iron Bow took possession of the materials. *See* [ECF 94] ¶ 74. Iron Bow's decision to take possession of the materials it paid for does not break the causal relationship between the USAF's alleged breaches and CENTECH's alleged damages. Like the alleged damages based on the costs of the BOM materials that the USAF allegedly refused to take possession of and then cancelled, CENTECH's alleged damages based on the costs of handling such materials are fairly traceable to the USAF's alleged breaches of its contract. Thus, CENTECH has standing to seek these alleged damages in Count II.

Furthermore, CENTECH has sufficiently stated its claims for damages under Counts I and II. The government argues that CENTECH failed to state a claim for breach of contract because it "does not provide sufficient factual allegations to plausibly assert that the Government's actions caused the alleged damages in Counts I and II." [ECF 95] at 19. This argument was also addressed in the prior decision by Judge Bruggink wherein the Court concluded that "[CENTECH] sufficiently pled a pass-through claim appealing the final decision of the contracting officer on plaintiff's assertion of a breach of contract." [ECF 22] at 2. The Court explained:

> The government ignores relevant fact assertions in the complaint: that the contracting officer initially approved the materials for order and installation, CENTECH made the materials available to the Air Force, and then the contracting officer rescinded approval immediately prior to delivery due to labor costs. The government may be correct, on the merits, that the Air Force had the right to refuse delivery of non-conforming materials or services. On a motion to dismiss for failure to state a claim, however, CENTECH has plausibly stated a claim that the Air Force breached the contract by improperly preventing delivery and failing to pay for the materials it approved CENTECH to order.

*Id.* at 7-8. As the Court stated, "[a] contractor may bring a subcontractor's claim against the United States as a pass-through, or sponsored, claim only when the contractor is liable to the subcontractor for its damages." *Id.* at 5. Here, CENTECH alleges that it remains liable to Iron Bow for the cost of the BOM materials, as well as for the transportation, storage, and insurance costs incurred by Iron Bow after taking possession of the materials. Thus, CENTECH has properly stated a claim for damages as a pass-through claim. *See J.L. Simmons Co. v. United States*, 304 F.2d 886, 888 (Ct. Cl. 1962) (stating that a pass-through claim "may be maintained only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future"). The resolution of the litigation between Iron Bow and CSC has not impacted the Court's previous determination that CENTECH has sufficiently stated claims for breach of contract under Counts I and II. CENTECH has plausibly alleged that its damages were caused by the USAF's failure to take delivery of and pay for the BOM materials—in breach of its contractual obligations.

      **B.**      **Motion to Dismiss the Breach of the Implied Duty of Good Faith and Fair Dealing Claims in Counts I and II Under RCFC 12(b)(6)**

The government argues that CENTECH's claim for breach of the implied duty of good faith, cooperation, and non-hinderance of performance in Counts I and II is also insufficiently pled because it "provides no [] tether between the implied duty and any contract term and fails to show how any specific contractual promise was undermined by the USAF[.]" [ECF 95] at 21. The government asserts that "CENTECH points to no contractual promise related to delivery [of the BOM materials] that was purportedly undermined." *Id*.

The implied duty of good faith and fair dealing "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005); *see also Agility Public Warehousing Co. KSCP v. Mattis*, 852 F.3d 1370, 1384 (Fed. Cir. 2017). The implied duty depends, in part, on what the contract promises or disclaims because of "the duty's focus on 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party[,]' which obviously depend on the contract's allocation of benefits and risks." *Metcalf Constr. Co., Inc. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014) (quoting Restatement (Second) of Contracts § 205 cmt. A (1981)). "While the implied duty exists because it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain, the nature of that bargain is central to keeping the duty focused on 'honoring the reasonable expectations created by the autonomous expressions of the contracting parties.'" *Id*. "The implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). "[A]ny breach of [the implied duty] has to be connected, though is not limited, to the bargain struck in the contract." *Metcalf*, 742 F.3d at 994.

CENTECH has sufficiently stated a claim for breach of the implied duty of good faith and fair dealing. CENTECH alleges that, under CLIN 0090 of the contract, the USAF was

required to reimburse it for the cost of materials purchased under the contract. [ECF 94] ¶ 52. CENTECH alleges that, based on the express authorization by the USAF, it instructed Iron Bow to order the BOM materials. *Id.* ¶¶ 53-54. After authorizing the purchase of the materials, CENTECH alleges that the USAF refused to permit delivery and installation of the materials and cancelled the order. *Id.* ¶¶ 56-57. CENTECH alleges that the USAF's refusal to permit delivery constituted a breach by the USAF of its implied duty of good faith and fair dealing under the contract. *Id.* ¶ 58. As a result, CENTECH alleges that it has not been reimbursed for the cost of the BOM materials. *Id.* ¶ 59. Additionally, CENTECH alleges that it has incurred transportation, storage, and insurance costs for handling the BOM materials due to the USAF's refusal to take possession of the BOM materials. *Id.* ¶ 75.

An obligation on the part of the USAF to allow CENTECH to deliver the BOM materials that it ordered based on the USAF's authorization is sufficiently tethered to the contract terms—specifically those terms that contemplate acquisition, delivery, and installation of the BOM materials by CENTECH and reimbursement of the material costs by the USAF. [ECF 94-1] at 42-44. A duty on the part of the USAF to accept delivery of the BOM materials after it authorized the acquisition of such materials is consistent with the contract's provisions and does not fundamentally alter the allocation of benefits and risks under the contract. *See Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) ("We have thus recognized that the duty must be 'keyed to the obligations and opportunities established in the contract,' so as to not fundamentally alter the parties' intended allocation of burdens and benefits associated with the contract." (quoting *Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341, 1349 (Fed. Cir. 2014)). CENTECH has adequately stated its claims for breach of the implied duty of good faith and fair dealing in Counts I and II.

### C.   Motion to Dismiss Count III for Attorneys' Fees Under RCFC 12(b)(6)

The government argues that CENTECH's claim for attorneys' fees in Count III fails to state a claim for contract administration costs under Federal Acquisition Regulation ("FAR") 31.205-33 because "CENTECH does not provide any allegations about the attorneys billing for legal work or how CENTECH incurred the costs for this legal work." [ECF 95] at 22. Specifically, the government contends that CENTECH "fail[s] to provide sufficient factual allegations that the costs were incurred by CENTECH or related to contract administration, namely, negotiations of [a Request for Equitable Adjustment] with the Government." *Id.* at 26.

In Count III, CENTECH alleges that it has "incurred reasonable attorneys' fees in the amount of $31,292.00 related to the pre-[c]laim filing negotiations aimed at attempted resolution" of this contract dispute. [ECF 94] ¶ 80. CENTECH argues that it is entitled to payment of such fees, as they constitute reasonable and allowable professional and consultant service costs under FAR 31.205-33. *Id.* ¶¶ 81-82. FAR 31.205-33(a) defines professional and consultant services as "those services rendered by persons who are members of a particular profession or possess a special skill and who are not officers or employees of the contractor." The definition lists as examples "those services acquired by contractors or subcontractors in order to enhance their legal, economic, financial, or technical positions." FAR 31.205-33(a). It goes on to state that "[p]rofessional and consultant services are generally acquired to obtain

information, advice, opinions, alternatives, conclusions, recommendations, training, or direct assistance, such as studies, analyses, evaluations, liaison with Government officials, or other forms of representation." *Id*.

CENTECH has plausibly alleged that it is entitled to attorneys' fees under FAR 31.205-33. *See Sikorsky Aircraft Corp. v. United States*, 161 Fed. Cl. 314, 320 (2022) ("A complaint will survive a motion to dismiss under RCFC 12(b)(6) if it contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quoting *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted, alteration in original)). CENTECH states that, "[p]rior to initiating a claim related to this matter, [it] incurred attorneys' fees for the attempted negotiation and resolution of potential claims related to the USAF's cancellation of the BOM." [ECF 94] ¶ 33. CENTECH alleges that "[s]uch fees qualify as professional and consultant service costs under FAR 31.205-33[.]" *Id.* ¶ 81. In support of its claim, CENTECH provides various invoices for attorney services incurred from September 5, 2018, to July 19, 2019. [ECF 94-1] at 166-85.

It is plausible that these fees were incurred for "the genuine purpose of materially furthering the negotiation process" with the USAF and thus may be recoverable under FAR 31.205-33. *Bill Strong Enters., Inc. v. Shannon*, 49 F.3d 1541, 1550 (Fed. Cir. 1995); *see also LCC-MZT Team IV v. United States*, 155 Fed. Cl. 387, 504-06 (2021). Most of the charges reflected in the invoices predate CENTECH's filing of its sponsored claim on behalf of Iron Bow, which occurred on June 5, 2019. [ECF 94-1] at 122. Further, while the invoices state that the charges are billable to Iron Bow, this does not preclude CENTECH from potentially recovering these charges as part of its sponsored claim on behalf of Iron Bow because FAR 31.205-33(a) contemplates the allowability of costs for services acquired by subcontractors. Further, CENTECH may pursue a pass-through claim for such costs incurred by its subcontractor. *See Ace Constructors, Inc. v. United States*, 70 Fed. Cl. 253, 289 (2006) (holding that the prime contractor may pursue a pass-through claim on behalf of its subcontractor). In sum, CENTECH's allegations and its supporting documentation are adequate to survive dismissal for failure to state a claim pursuant to RCFC 12(b)(6). Whether CENTECH will be able to demonstrate that it is entitled to reimbursement of such attorneys' fees under FAR 31.205-33 as part of its pass-through claim is an issue for resolution on the merits.

## IV. CONCLUSION

For the reasons stated above, the government's motion to dismiss CENTECH's Second Amended Complaint [ECF 95] is **DENIED**. The government **SHALL FILE** its answer to CENTECH's Second Amended Complaint within fourteen (14) days of the date of this Opinion and Order. *See* [ECF 92] at 2. The parties **SHALL CONFER AND FILE** a status report within seven (7) days after the government files its answer proposing a schedule for further proceedings.

**IT IS SO ORDERED.**

                                                  s/ Thompson M. Dietz
                                                  THOMPSON M. DIETZ, Judge